*272 OPINION.
Milliken :
The petitioner contests that part of the deficiency due to the Commissioner’s action in adding the $12,267.70 in second mortgage notes to its income for the year in question. It is not disputed that petitioner was on an accrual basis and that such notes were received in 1921 and were income to it to the extent of the fair market value thereof. Petitioner’s contention is that the notes had no fair market value when received, and, accordingly, should be entirely eliminated in the computation of income for 1921.
The testimony shows that it was generally considered unsafe to sell a Ford automobile on a deferred payment plan for less than 331/3 per cent cash, where the only security for the balance was a mortgage on the car sold. It was also shown that the sales plan carried out by petitioner, to dispose of an oversupply of cars, by requiring a cash payment of from 20 to 25 per cent, had not been theretofore tried by retail automobile dealers. The second mortgage notes taken by petitioner were certainly not sufficiently secured to make the notes worth face value.
On the other hand, it is admitted by petitioner that they had some value. Petitioner did not sell or offer to sell any of such notes. Three bankers of the locality in which the business of petitioner is located *273 and who bad experience in passing on automobile paper, were of the opinion that the notes were not commercial paper unless indorsed by a responsible dealer, and, if such paper was offered in lots in the usual way, their banking firms would not even consider the lots worth investigating. One of them stated that the actual worth of the notes would depend upon the maker, though responsible persons did not usually purchase cars on terms requiring a first and second mortgage. We do not think the fact that such notes would not have been accepted by a bank as commercial paper without investigating the individual maker establishes the absence of any fair market value in the notes. . The fact that nearly 83 per cent of the face value of the notes, or $10,149.00, was collected in 1922, the year in which they were due, was brought out by questioning of the principal witness by the Board. Although that fact was not available in determining the fair market value of the notes when they were received, we think it, when properly discounted in the light of the other evidence, tends to afford some criterion concerning the fair market value of the notes in question. After a careful consideration of all the evidence, we are of the opinion that the fair market value of the second mortgage notes, when they were received, was $8,750, and should have been reflected in computation of gross income in that amount. The difference between the face value and the fair market value of such notes is $3,517.70.
However, the deficiency in controversy is not based solely upon the determination that the notes were worth their face value. It appears, from the evidence of record that the Commissioner considered that the reserve for bad debts maintained by petitioner was sufficient to cover losses upon the second mortgage notes in question and to grant any further allowance would be to allow a double deduction. The facts of record do not rebut the presumption. We have found as a fact that there is a bad debt item of $3,672.05, which is not shown by petitioner to have been deducted on account of obligations other than the notes in controversy. Since this item, not accounted for, is greater than the difference between the face value and the fair market value of the notes in question, or $3,517.70, we are unable to determine that the Commissioner committed error in the determination of the deficiency. Petitioner was specifically put on notice as to the proof required, not only by the statement attached to the deficiency letter, but by the evidence adduced at the hearing of this proceeding by counsel for the Commissioner.

Judgment will be entered for the respondent.